UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MAYERLINE SANDERS

                                      Plaintiff,

                                                                         **COMPLAINT**

     -against-

                                                                         **JURY TRIAL**
                                                                         **DEMANDED**

PHILIP MORRIS INTERNATIONAL INC. ("PMI")
AND
STEVEN B. RISSMAN

                                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Plaintiff MAYERLINE SANDERS upon personal knowledge and upon information and belief as to the matters, allege as follows:

**NATURE OF ACTION**

      1.     Plaintiff is a former Senior Executive Secretary for Defendant Steven B. Rissman employed at Philip Morris International Inc. (hereinafter "PMI"). She brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), codified as 42 U.S.C.§ 2000e-et seq.; New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 et seq., New York City Human Rights law and NYC Administrative Code §8-101 et seq. for injuries she sustained as the result of gender discrimination and retaliation committed by the Defendants.

**JURISDICTION AND VENUE**

      2.     Because Plaintiff alleges violations of the aforementioned laws of the United States, which encompass, inter alia, claims for violations of her civil rights, this Court has

jurisdiction over this action under 28 U.S.C. § 1331 and 1343(a)(4)..

3. Plaintiff filed the instant complaint within 90 days of receipt of the Notice of Right to Sue from the Equal Employment Opportunity Commission for violation of Plaintiffs federally protected rights. EEOC Charge Number 520-2015-02049.

4. Plaintiff respectfully asks this Court to assert its jurisdiction under 28 U.S.C. § 1367(a) over her claims arising from New York State and local law.

5. The principal place of business for Defendant PMI is 120 Park Avenue, New York, New York 10017 and therefore Venue properly lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## THE PARTIES

### PLAINTIFF

6. Plaintiff Mayerline Sanders is a citizen of the United States and a resident of Kings County Brooklyn, New York. She was a Senior Executive Secretary at PMI for 3 years and 8 months. She was the Senior Executive Secretary to Defendant Steven B. Rissman ("Rissman"). Plaintiff suffered discrimination because of her gender and retaliation when she was terminated after complaining of Rissman's behavior by the illegal, willful, intentional and unprivileged actions of the Defendants.

### DEFENDANTS

7. Defendant Philip Morris International Inc. ("PMI") is a leading International Tobacco Company headquartered in New York City. PMI is subject to the provisions of Title VII of the Civil Rights Act of 1964; NYS Human Rights Law, NYC Human Rights Law; and New York statutory and common law because at all times relevant to this action, PMI was

Plaintiff's "employer" within the meaning of all of the enumerated bodies of U.S. and New York law.

8. Defendant Rissman is the Vice President and General Counsel of Litigation and Investigation for PMI Global Services. He oversees the global litigation strategy for PMI. Rissman was Plaintiff's immediate supervisor. Throughout his tenure at PMI, Rissman has been known to discriminate against female employees. He often treated female employees in a very derogatory manner and has never been held accountable by PMI for his discriminatory behavior. At least 3 executive assistants were either terminated or reassigned after complaining of the discriminatory treatment by Rissman.

## OTHER RELEVANT PERSONS

9. Brian Harrison (V.P. of HR.) was aware of the issues Plaintiff was having with defendant Rissman. Harrison counseled Plaintiff on her response to a negative review from Rissman. Harrison terminated Plaintiff after telling her she would not be terminated for complaining about Rissman.

10. Horacio Barroumeres (Compliance). Barroumeres was made aware of the Plaintiff's complaints about Rissman after Plaintiff had complained to the then Director of Human Resources, Elizabeth Byrnes. Barroumeres met with Plaintiff regarding her complaint and informed her that she would not be punished for using PMI's internal grievance system.

11. Elizabeth Byrnes the former Director of Human Resources was made aware of the discriminatory actions of Rissman towards Plaintiff but took no action. She notified Plaintiff that Rissman had issues with Plaintiff's work.

12. Karen Zani a Corporate Secretary with direct knowledge of Rissman's discriminatory actions towards Plaintiff.

13. Claire Carcich a Contract Attorney who previously reported to Rissman and was treated inappropriately because she is female.

14. Patricia Cipriano Executive Assistant and former assistant to Rissman was transferred after she allegedly complained about the discriminatory and derogatory treatment she suffered from Rissman because of her sex.

## SUMMARY OF THE ACTION

15. On March 9, 2015, Brian Harrison, Vice President of Human Resources terminated the employment of Plaintiff Mayerline Sanders from her position as Senior Executive Secretary to Defendant Rissman. Plaintiff was told that her termination was due to her rebuttal of her employment review and her original refusal to communicate with Rissman other than by email.

16. Prior to her termination, Plaintiff met with Harrison on more than one occasion to discuss her ongoing issues with Rissman. Plaintiff met with Harrison after filing a formal complaint with Elizabeth Byrnes, the HR Manager in October 2014. Byrnes was ineffective in her role as HR Manager and Plaintiff escalated her issues with Rissman to Harrison. Of note was a performance evaluation issued to Plaintiff by Rissman for which Plaintiff vigorously objected to the conclusions drawn by Rissman. Byrnes, who is friendly with Rissman did not follow

PMI's policy guidelines and did not attempt to resolve the conflicts and issues between Plaintiff and Rissman. Byrnes only response to Plaintiff was that Rissman "has issues regarding your ability". Prior to Plaintiff's complaint, Rissman never had an issue with Plaintiff's ability or her job performance. Harrison informed Plaintiff of the proper procedure on how to respond to the information contained in the employment review and informed Plaintiff that she did everything correctly.

17. Plaintiff a trusted, competent and diligent employee worked at PMI for 3 years 8 months as the Senior Executive Secretary to Rissman. Her job duties included but were not limited to keeping Rissman's work calendar, booking and scheduling his travel, emailing contacts and any other jobs Rissman required including visiting his apartment to retrieve his passport. While working for Rissman, Plaintiff supported three other attorneys in the legal department at PMI. Plaintiff had a good working relationship until she challenged Defendant Rissman.

18. Rissman's treatment towards Plaintiff changed after she objected to notarizing a document she knew was not witnessed by the signator. Rissman was furious and shouted at Plaintiff to notarize the document because he wanted it done. Even though Plaintiff felt bullied, she notarized the document upon Rissman's order.

19. After the incident involving the notarized document, Plaintiff started experiencing derogatory, humiliating and discriminatory treatment from Rissman. Rissman started to create a hostile working environment for Plaintiff. Rissman lied about the Plaintiff not notifying him about taking sick days, he yelled at her and degraded her in front of her work colleagues.

20. Plaintiff reported her difficulties to Byrnes the then Director of Human Resources in October 2014. No action was taken by Byrnes. In the interim, Rissman gave Plaintiff a very negative annual employment review. Plaintiff was able to refute the negative review with documentary evidence establishing to HR that in fact Rissman was lying in his assessment of her capabilities based on specific incidents he cited in the review. As a result, Plaintiff went to Harrison, the VP of HR to file a complaint in addition to using PMI's grievance system. She was assured that she would not be terminated for using the grievance process.

21. On February 3, 2015, Plaintiff was contacted by Horacio Barroumeres, PMI's Compliance officer after she invoked PMI's grievance process after her complaints to Harrison. Barroumeres assured Plaintiff that she would not be terminated for triggering a grievance complaint against Rissman. However, Barroumeres concluded that Plaintiff did not have a case and closed his investigation.

22. Harrison in his attempt to resolve the problems between Plaintiff and Rissman asked Plaintiff for suggestions on a possible resolution of the issues with Rissman. At first, Plaintiff told Harrison that she thought communication by email would be best with Rissman because he often lied about conversations or mischaracterize Plaintiff's statements. Plaintiff subsequently informed Harrison that she was willing to speak with Rissman but she would rather Rissman not yell at her and treat her in the very derogatory way he had started treating her. Plaintiff's request to speak to Rissman by email was in no way jeopardizing her job as Rissman's secretary because for weeks after the incident regarding notarizing the document, Rissman did not speak with Plaintiff. He literally ignored her and acted as if she did not exist. Plaintiff also

asked Harrison if it was possible for her to work for the other attorneys that she supported and not Rissman or if she could be transferred. The request was denied.

23. After meeting with Harrison, Plaintiff was put on paid leave in February 2015 and told that she will be notified once they (PMI) have figured out what to do. On March 9, 2015 Plaintiff was terminated.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON GENDER

24. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 23.

25. Defendants PMI and Rissman discriminated against Sanders based on her gender by treating her differently from her male colleagues who are similarly situated in violation of NYS Human Rights Law, NYC Human Rights Law, and Title VII of the Civil Rights Act of 1964.

26. Defendant Rissman has a history of treating women inferior and in a derogatory manner. There has been numerous complaints and grievances filed against Rissman, however because of his position, PMI enables his behavior despite how illegal it might be in violating both federal, state laws and local laws.

27. Plaintiff was humiliated, yelled at and berated for asking Rissman if a dinner he attended at the 4 Seasons Restaurant was business or personal. In another incident, Rissman aggressively approached Plaintiff for not following his orders regarding a parking expense.

When Plaintiff showed him his own mark up of the expense report, Rissman told Plaintiff he would only reach out to her after work hours or on the weekend if there is an emergency.

28. On more than one occasion Rissman berated and belittled Plaintiff about PMI system problems, however, when a male employee from the IT department told Rissman the same thing the plaintiff told him, he accepted the male employee's explanation without raising his voice or being derogatory. Rissman treated male employees totally different than he treated Plaintiff. Rissman had issues with not just Plaintiff but other female employees including another Executive Secretary and Clair Carcich a female attorney at PMI. Both made complaints about him.

## SECOND CAUSE OF ACTION

## RETALIATION

29. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 28.

30. Defendants PMI and Rissman discriminated against Plaintiff by retaliating against her for complaining about Rissman's treatment of her in violation of Title VII of the Civil Rights Act of 1964, NYS Human Rights Law and NYC Human Rights Law.

31. Plaintiff Sanders complained to HR on numerous occasions regarding the disparate and discriminatory treatment by Rissman after she objected to notarizing a document she did not witness the signator execute. Plaintiff eventually notarized the document after being bullied by Rissman and ordered to do so.

32. After that incident where Rissman yelled at Plaintiff that he wanted the document notarized, Defendant Rissman was notified that Plaintiff had reported him to HR. His campaign to retaliate against her was put into effect.

33. Rissman gave Plaintiff a very negative employment review which she protested. Plaintiff used documentary evidence to prove to HR that the complaints in the year end review were false. Once Plaintiff challenged Rissman's accounts in her review he made it unbearable for her to work without the constant fear of loosing her job. The other attorneys that Plaintiff supported had no negative comments about her work. In fact, the other attorneys that Plaintiff supported thanked her for helping them and even gave Plaintiff Christmas cards with bonuses as an appreciation for her work. Conversely, Rissman often became furious that Plaintiff was supporting the other attorneys in the department because she worked for him directly.

34. After Plaintiff's complaints to the HR manager yielded no results, she then went and complained to the Vice President of HR, Harrison. Harrison counseled Plaintiff on how to handle her complaints on the company's internal process. He assured Plaintiff that she was "doing the right thing" and that the complaint would not get her fired.

35. Plaintiff requested a transfer to work for another executive in the company and the request was denied. Plaintiff was then contacted by the Compliance officer who held a meeting with Plaintiff regarding her complaints. Plaintiff was again reassured that she would not be terminated for complaining that Rissman had a problem with women and how the women were treated in a very humiliating and derogatory manner by him which was totally different than how the men were treated.

36. Plaintiff informed Harrison that it was so difficult to communicate with Rissman because he was always right, unclear with his instructions, very fickled with what he wanted and would blow up if things were not up to his expectations even if he was at fault. Plaintiff proposed to communicate with Rissman via email to reduce the chances of miscommunication. Harrison informed Plaintiff that said form of communication would not be viable especially with her being Rissman's executive secretary. Plaintiff then informed Harrison she would do everything to have better communication with Rissman and she would make it work. Plaintiff's request to communicate with Rissman via email was not unfounded because at times Rissman refused to speak with or acknowledge Plaintiff other than through emails.

37. After Plaintiff's numerous meetings with Harrison she was terminated. This termination was in retaliation for making a complaint against Rissman, VP and General Counsel of Litigation. Plaintiff had already proven to Harrison that the negative employee review was punishment for her challenging Rissman on notarizing a document.

38. Three other female employees complained about the awful derogatory and discriminatory treatment they experienced from Rissman. One employee was reassigned, one was terminated and the other continue to work at the company in a role that requires limited to no interaction with Rissman.

**THIRD CAUSE OF ACTION**

**HOSTILE WORK ENVIRONMENT**

39. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 38.

39. Defendants PMI and Rissman created a hostile work environment for Plaintiff in violation of Title VII of the Civil Rights Act of 1964, NYS Human Rights Law and NYC Human Rights Law.

39. Rissman started creating a hostile work environment for Plaintiff after she objected to notarizing a document when she did not witness the signator execute the document. She felt that she had no choice but to notarize the document because of how angry Rissman became and order her to notarize the document. Plaintiff was in tears and visibly shaken by the ordeal and was fearful that she would loose her job.

40. Plaintiff became afraid of Rissman because he yelled, demeaned and dismissed her. For example, Plaintiff did Rissman's expenses for reimbursement. She asked him if a dinner he attended at the Four Seasons was business or personal and if it was business the name of the parties who attended. At that point, Rissman became incredulous and started yelling and belittling Plaintiff.

42. Rissman was very indecisive with his travel plans and required that Plaintiff use three different travel sights to book him a ticket. He often berated Plaintiff if he did not get the proper flight or seating despite him not being able to make up his mind when provided the requisite information.

43. Rissman's negative employee review of Plaintiff was another instance of Rissman making life difficult for Plaintiff because of her complaints to HR. She suddenly became incompetent and lacked the ability to perform her duties after 3 years and 8 months as his Executive Secretary. His specific complaints about the Plaintiff were not borne out to be anything more than lies that were proven false by documentary evidence Plaintiff had in support of her

contention that Rissman was lying.  For example, Rissman was became angry because he claimed that Plaintiff did not inform him about an iPad upgrade.  In fact not only did Plaintiff email him about the iPad upgrade, she also informed him about the specific month he was eligible for an iPhone upgrade including the price based on his PMI discount.  Rissman also berated Plaintiff for him not having the ability to do TSA pre-check at the airport.  That task was assigned to someone else and Plaintiff noticed the errors Rissman made on his application process and rectified them.  He was rude and offensive in addressing the issue of the TSA Pre-Check for which Plaintiff had no control because she was a PMI employee and did not work for Homeland Security.   Rissman was also very unhappy that Plaintiff  assisted other attorneys in the department and he vocalized it very sternly.

44. Rissman  found any excuse to make the Plaintiff's work life miserabe.  The stress from dealing with Rissman became so bad that Plaintiff's eczema flared up significantly because of the continuous stress she was under as a direct result of Rissman's actions.  Plaintiff was afraid to go to work when Rissman was in the office.  When he was traveling, that was the only moments when Plaintiff was stress free because assisting the other attorneys in the department did not carry the stress and unease as it did with Rissman.

45. In his vindictive quest to punish Plaintiff for not wanting to notarize a document, Rissman would go for weeks without acknowledging or speaking to Plaintiff. Plaintiff never knew what Rissman's demeanor or attitude would be on any given day. She dreaded having to work with Rissman after their employment relationship changed from positive to very negative.

46. Defendant Rissman often asked Plaintiff to work through her lunch break, once she was finished with whatever project he asked her to perform, she would inform him that she

was taking lunch. Rissman would then tell Plaintiff that she can no longer take lunch because it was too late. This was another tactic used by Rissman to make Plaintiff's work life very difficult.

47. The Plaintiff became concerned because Defendant Rissman had made his distain for Plaintiff more and more evident each day. He would literally toss paperwork on Plaintiff's desk while she was working which literally caused her to jump from the shock of it, Rissman blamed Plaintiff because CIGNA changed their insurance forms. Rissman would also ask Plaintiff to work past her scheduled end time and would refuse to authorize overtime. These tactics were punishment as a direct result of Plaintiff having the audacity to rightfully challenge Defendant Rissman about notarizing a document she did not witness a signator executing.

45. As such, Rissman created a hostile work environment for Plaintiff in violation of both state and federal laws.

### **PRAYER FOR RELEIF**

WHEREFORE Plaintiff respectfully requests that this Court enter judgment against the Defendants as follows:

a) Actual, presumed and punitive damages in an amount to be specifically determined at trial and under all appropriate provisions of Title VII Civil Rights Act of 1964 and under NY State and local law;

b) All costs, disbursements, fees and interest as prescribed by New York CPLR, and for the reimbursement of experts under Title VII and or any other applicable law;

c) Such other and additional remedies as the Court deems just and proper.

## JURY TRIAL

Plaintiff demands a jury trial for all causes of action and claims for which she has a right to a trial by jury.

Dated: August 31, 2015
       Queens, New York

                        LEWIS AUSTIN P.C.

                        By:/s/_____
                          Rodney R. Austin, Esq
                          102 27 183rd Place
                          Hollis, New York 11423
                          Tel: (646) 431-7736
                          Fax: (877) 586-7490